DREW, J.
1/We decide here whether this record justifies the district court’s affirmation of the Shreveport City Council’s rejection of an application for a building site plan. We hold that it does not, and reverse.
This is not a zoning dispute, and it is not a separation of powers matter. This case is about a city council arbitrarily preventing a property owner from using its property exactly as zoned. This record does not support this blatant violation of plaintiff corporation’s use by right.
Several years after the subject property was zoned 1-1 (Light Industrial), an adjoining tract was zoned for residential purposes by the Shreveport City Council, allowing construction of Sagewood Subdivision. In hindsight, it is clear that resi *280 dential zoning of the contiguous property was a poor decision, as conflicts such as this lawsuit were likely to occur.
Some residents of Sagewood objected to WRW’s request to construct a fourth building on the site, even though:
1. A strikingly similar building plan for a third building on the property had been approved by the council only eight months before the Council rejected this plan;
2. WRW complied with the Metropolitan Planning Commission’s modification suggestions that it plant trees along the boundary with Sagewood and construct an 8-foot wooden fence between the properties;
3. No complaint was made that any proposed actions of WRW violated any city zoning regulations;
4. WRW was seeking a use by right, which should be presumptively approved; and
5. Adverse decisions as to a use by right should be strictly scrutinized.
The Metropolitan Planning Commission approved the request. The dispute moved to the Shreveport City Council.
12At the council meeting in question, only one person spoke against the building plan. The speaker made several incorrect claims[1] that are belied by documentary filings, as well as by basic common sense. His objections were actually putative zoning issues and were inappropriate to this situation.
WRW was requesting approval of a building site plan in conformity with all zoning regulations. If the actual use of the proposed building subsequently violated any zoning requirements, the city would always be able to seek redress in the courts, for the enforcement of any zoning laws.
This is the third time in the last five years that we have reversed Shreveport City Council actions that have violated a property owner’s use by right. Two cases from 2009, authored by Judge Moore,[2] reversed this same council, on the same grounds for which we reverse today.[3]
| ^Subsection (a) of Shreveport Ordinance § 106-44[4] provides guidance as to *281 the appropriate analysis of these disputes. Adequate compliance with the controlling ordinance is not reflected in this record.
If the council’s action here is lawful, there would be no need for zoning regulations. Without consistent zoning ordinances, there would be no planned and orderly growth of municipalities. Replacing long-term rationality with short-term expediency, ie., looking at each situation on a purely ad hoc political basis, is no way to run Mayberry, much less Shreveport.
Zoning regulations must be uniformly applied within each district or zone of the municipality. Jenkins v. St. Tammany Parish Police Jury, 98-2627 (La.7/2/99), 736 So.2d 1287.
|4This arbitrary action of the Shreveport City Council is contrary to law and adverse to our basic precepts of equal protection and due process. The plaintiff here sought no variance and no re-zoning. What the plaintiff corporation wanted to do was to utilize its property in strict compliance with all zoning ordinances, after making the changes required by the Metropolitan Planning Commission. The plaintiff is entitled to exercise its use by right.
DECREE
We reverse the trial court and render judgment in favor of WRW Properties, L.L.C., approving construction of the proposed building, subject to the conditions required by the Metropolitan Planning Commission.
No costs of court are assessed, as per La. R.S. 13:4521.
REVERSED AND RENDERED.

. Two examples:
Claim # 1. The speaker alleged that the building had burned and emitted smoke.
Answer to # 1. There are three buildings on the property, none of which have burned. Certainly the PROPOSED building has never burned, since it doesn’t exist.
Claim # 2. The speaker further complained that the proposed building would back up to within seven feet of his back door.
Answer to #2. The drawing annexed to the application clearly reflects that the correct distance is slightly over 72 feet. The speaker exaggerated by a factor of 11.

. These two referenced opinions are directly on point and highly instructive:
• Uniform application of land use regulations is required by La. Const. Art. VI, § 17. Urban Housing of America, Inc. v. City of Shreveport, 44,874 (La.App.2d Cir.10/28/09), 26 So.3d 226, writ denied, 2010-0026 (La.4/23/10), 34 So.3d 269.
• Use by right is presumptively valid and should be approved. See D‘Argent Properties, LLC v. City of Shreveport, 44,457 (La.App.2d Cir.6/24/09), 15 So.3d 334, writ denied, 2009-1726 (La.11/6/09), 21 So.3d 308.

. We realize that our opinions can be pretty dry, but it would help if the Shreveport City Council would at least consider our rulings that involve the council, particularly when the alternative is to continually repeat the same mistakes in an endless political loop.

. Sec. 106-44. — Planning commission approvals.
(a) Intent.
To ensure a safe, efficient, attractive and well-ordered community and best serve the interests of public health, safety and welfare, *281 the development plans of all non-residential uses, multi-family dwellings, planned unit developments and planned building groups are subject to review and approval by the planning commission prior to the issuance of building permits, unless specifically waived by ordinance. Moreover, in order to provide for the location of uses with unique characteristics which may be necessary or appropriate within a given district but which might otherwise adversely impact future development, existing nearby properties or the community, a classification of permitted uses is established in each district that requires the review and approval of a specific development plan by the planning commission. Planning commission approvals may be conditional, subject to any modifications specified. Relevant objectives for the development include, but are not limited to:
(1) That it be designed, constructed, operated and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity;
(2) That it not be hazardous or disturbing to existing or future nearby uses, property or persons through activities, processes, materials, equipment or operations that produce excessive traffic, noise, smoke, fumes, glare or odors without adequate means of control;
(3) That it be adequately served by essential public facilities without the need for excessive additional requirements at public expense that is detrimental to the economic welfare of the community; and
(4) That it not result in the destruction, loss, damage or reduction of the public enjoyment of a natural, scenic or historic feature of major importance.